# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

*FILED*

*01 AUG -7 AH 10: 46*

*U.S. DISTRICT COURT*
*N.D. OF ALABAMA*

| | | |
|---|---|---|
| SAMANTHA GAINES, | ) | |
| | ) | |
| Plaintiff, | ) | *233* |
| | ) | |
| vs. | ) | CV-01-PT-0223-E |
| | ) | |
| ORTHO-MCNEIL | ) | |
| PHARMACEUTICAL, et al., | ) | **ENTERED** |
| | ) | |
| Defendants. | ) | **AUG 0 7 2001** |

## MEMORANDUM OPINION

This cause comes to be heard upon defendant Parkway Physician Practice Company's

("Parkway") Motion to Dismiss, filed on June 14, 2001.

### FACTS

Plaintiff Samantha Gaines ("plaintiff"), currently a resident of Alabama, was a resident

of Lithia Springs, Georgia when she first sought prenatal care from defendant Parkway, a

Georgia corporation located in Lithia Springs. Sometime after she became one of Parkway's

patients, she relocated to Alabama. She claims that, at the time that she relocated, she expressed

concern that she was moving too far away from the defendant's office, but was reassured that the

distance would not pose a problem, and that the practice treated several Alabama patients.

Following her relocation, the plaintiff continued to seek treatment from Parkway, and,

ultimately, delivered the child in Parkway's Lithia Springs hospital. In 1996, after the baby was

born, the plaintiff again went to Parkway's Lithia Springs office for a follow-up examination,

and was given the intrauterine device ("IUD" or "Copper T") that is the subject of this action.

1

In January 1999, Gaines was admitted to the hospital, complaining of severe pelvic pain. She alleges that her treating physician informed her that the pain was caused by the IUD. Although he removed the IUD at that time, the plaintiff claims that she has experienced numerous physical and reproductive complications including an ovarian cyst resulting in the removal of one ovary; an ectopic pregnancy; and a miscarriage. The plaintiff attributes all of these problems to the IUD installed by Parkway. The plaintiff filed a complaint against Parkway, Johnson & Johnson, and Ortho-McNeil Pharmaceutical, in this court on January 23, 2001, and subsequently filed a First Amended Complaint on April 17, 2001. The complaint, in Count I, pleads failure to warn and, in Count II, pleads a violation of the Alabama Extended Manufacturer Liability Act. Defendant Parkway now moves for this court to dismiss it from this action for lack of personal jurisdiction.

## FACTS TENDING TO ESTABLISH OR NOT ESTABLISH PERSONAL JURISDICTION

Each party has offered facts to prove or disprove personal jurisdiction. They are enumerated as follows:

### Plaintiff

The plaintiff argues that both general and specific personal jurisdiction exist in this case, based upon the following facts:

(1) Parkway treated the plaintiff while she was an Alabama resident, even though, when the treatment began, the plaintiff was a Georgia resident.

(2) Parkway recommended to the plaintiff while she was an Alabama resident that she come to its facility for follow-up prenatal and postnatal treatments, as well as for the insertion of the IUD.

2

(3) Parkway's office in Lithia Springs is an approximate 30-minute drive from the Alabama border.

(4) Although the plaintiff admits that it is not certain, it alleges that further discovery could possibly uncover, in Alabama media outlets, advertisements for Parkway's practice.

**Defendant**

The defendant argues that the following facts negate both general and specific personal jurisdiction in this case:

(1) Parkway is incorporated under the laws of Georgia.

(2) Parkway maintains its principal place of business in Georgia.

(3) Parkway is not registered in Alabama and maintains no registered agent for service of process in Alabama.

(4) Parkway does not own, rent, lease, or control any property or bank accounts in Alabama.

(5) Parkway has never solicited business in Alabama.

(6) Parkway has not entered into any contracts with persons from Alabama.

(7) Parkway's key personnel have not visited Alabama.

(8) Parkway does all of its business in Georgia.

(9) When the plaintiff sought the defendant's services, she was a Georgia resident and had not yet relocated to Alabama.

(10) The plaintiff initiated all contacts with Parkway.

(11) Parkway does not advertise through media outlets in Alabama, and does not advertise in regional media outlets that target the Alabama market.

3

## STANDARD

When a district court does not conduct an evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over the non-resident defendant. Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). A plaintiff establishes a prima facie case when she or he presents enough evidence to withstand a motion for directed verdict. Id. The district court must accept the facts as alleged in the complaint as true, but only to the extent they are uncontroverted by the defendant's affidavits. Id. Where a factual conflict is present and the court does not conduct an evidentiary hearing, the court must construe all reasonable inferences in favor of the non-moving party. Id. See also Francosteel Corp. v. M/V Charm, 19 F.3d 624, 626 (11th Cir. 1994); Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc., 207 F.3d 1351, 1356 (11th Cir. 2000). Whether a district court conducts an evidentiary hearing is discretionary. Madara, 916 F.2d at 1514; Ruiz de Molina, 207 F.3d at 1356. In assessing the propriety of a motion to dismiss for lack of jurisdiction, a district court is not limited to inquiry into undisputed facts; the court may hear conflicting evidence and decide for itself factual issues that determine jurisdiction. See Colonial Pipeline Co. v. Collins, 921 F.2d 1237, 1243-44 (11th Cir. 1991) (dealing with subject matter jurisdiction). A plaintiff should generally have ample opportunity to present evidence bearing on the existence of jurisdiction. Id. In summary, if a material issue is contested and there is conflicting evidence, a court must either deny the motion to dismiss and postpone any further jurisdiction challenge until trial, or hold a preliminary evidentiary hearing. This court has not, thus far, held an preliminary evidentiary hearing.

## THE REQUIREMENTS FOR PERSONAL JURISDICTION

Defendant Parkway contends that there can be no general jurisdiction over it because it

4

has no contacts with the State of Alabama in any way, other than through the plaintiff. Parkway argues that there can be no specific jurisdiction over it as well because its contacts with the plaintiff are not sufficient for it to anticipate being haled into court in Alabama. The plaintiff, in essence, argues that both general and specific personal jurisdiction exist over Parkway.

As an initial matter, the court notes that there are two types of personal jurisdiction: general and specific. See, e.g., Madara, 916 F.2d at 1516 n.7. "Specific personal jurisdiction is founded on a party's contacts with the forum state that are related to the cause of action. General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation." Id. (citing Helicopteros Nacionales de Colombia N.A. v. Hall, 466 U.S. 408, 414 n. 8, 9 (1984); Cable/Home Comm. Corp. v. Network Productions, Inc., 902 F.2d 829, 857 n. 41 (11th Cir. 1990); Morris v. SSE, Inc., 843 F.2d 489, 491 n.2 (11th Cir. 1988)). The court concludes that there is no reasonable inference that the court has general personal jurisdiction over Parkway. Thus, the court will focus its attention on whether it has specific personal jurisdiction over defendant.

Courts employ a two-part analysis when determining whether they have personal jurisdiction over a non-resident. Madara, 916 F.2d at 1514. A court first determines whether jurisdiction is proper under the forum state's long arm statute. Id. If the first prong is met, the court next considers whether its exercise of jurisdiction will offend federal due process requirements. Francosteel, 19 F.3d at 627. This second prong is itself a two-part inquiry. Madara, 916 F.2d at 1515-16. First, the court must decide whether the defendant has established "minimum contacts" with the forum state. Id. Second, the court must decide whether the exercise of personal jurisdiction over the defendant would offend "traditional notions of fair play and substantial justice." Id. (citing Williams Elec. Co. v. Honeywell, Inc., 854 F.2d 389, 392

5

(11th Cir. 1988) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1940))).  If

all of these elements are met, the court may exercise jurisdiction over the defendant.

The first question for this court, then, is whether jurisdiction is proper under Alabama's

long arm statute.  Alabama's long-arm statute provides, in pertinent part, that:

> "[a] person has sufficient contacts with the state when that person ... otherwise
> having some minimum contact with this state and, under the circumstances, it is
> fair and reasonable to require the person to come to this state to defend an action
> ... so long as the prosecution of the action against a person in this state is not
> inconsistent with the constitution of this state or the Constitution of the United
> States."

ALA. R. CIV. P. 4.2(a)(2)(I).  As such, the Alabama long-arm statute is as broad as is permissible

under the limits of federal due process.  See Alabama Waterproofing Co., Inc. v. Hanby, 431

So.2d 141, 145 (Ala. 1983); Oliver v. Merritt Dredging Co., Inc., 979 F.2d 827, 830 (11th Cir.

1992); Butler v. Beer Across America, 83 F. Supp. 2d 1261, 1265-66 (N.D. Ala. 2000).

Because the Alabama inquiry and federal inquiry as to personal jurisdiction are coextensive, this

court need only consider whether the exercise of specific personal jurisdiction here will satisfy

the federal requirements of due process.  Oliver, 979 F.2d at 830;  Banton Industries, Inc. v.

Diamatic Die & Tool Co., 801 F.2d 1283, 1284 (11th Cir. 1986);  Butler, 83 F. Supp. 2d at 1266.

The court next turns to the federal due process requirements.

**Minimum Contacts**

"Where a forum seeks to assert specific personal jurisdiction over a nonresident

defendant, due process requires that the defendant have 'fair warning' that a particular activity

may subject him [or her] to the jurisdiction of a foreign sovereign."  Madara, 916 F.2d at 1516

(citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1977) (Stevens, J. concurring in

judgment)).  A defendant has established minimum contacts with the forum state for purposes of

6

personal jurisdiction when his contacts with that state are "substantial enough that [he] reasonably could expect to be haled before [that forum's] court." Delong Equipment v. Washington Mills Abrasive Co., 840 F.2d 843, 853 (11th Cir. 1988). A defendant should possess this reasonable expectation "if the defendant purposefully directs its activities at forum residents and 'the litigation results from alleged injuries that arise out of or relate to those activities.'" Id. (quoting Burger King, 471 U.S. at 472). According to the Supreme Court in Burger King, "[w]here the defendant 'deliberately' has engaged in significant activities within a State . . . he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws, it is presumptively not unreasonable to require him to submit to the burdens of the litigation in the forum as well." 471 U.S. at 476.

Jurisdiction is proper where the defendant has proximately created, through his or her own actions, a "substantial connection" with the forum state. Burger King, 471 U.S. at 475 (quoting McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957)). Jurisdiction is also proper when the defendant has purposely availed itself of the benefits and protections of the laws of the forum state. Hanson v. Denckla, 357 U.S. 235, 253 (1958); Ruiz de Molina, 207 F.3d at 1356.

**Fair Play and Substantial Justice**

Once the first prong of the due process test is satisfied, the court next looks to whether its assertion of personal jurisdiction over the defendant would comport with "fair play and substantial justice." See Madara, 916 F.2d at 1517 (citing Burger King, 471 U.S. at 476 (quoting International Shoe, 326 U.S. at 320)). The factors utilized by courts are the burden on the defendant in defending the lawsuit in the subject forum, the forum state's interest in adjudicating

7

the dispute, the plaintiff's interest in obtaining convenient and effective judicial relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering their own state policies. See Madara, 916 F.2d at 1517 (citing Burger King, 471 U.S. at 177; and World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

## ARGUMENT

Defendant Parkway relies upon Butler v. Beer Across America, 83 F. Supp. 2d 1261, 1266 (N.D. Ala. 2000), in which the district court found that, although the defendant had sold goods to an Alabama plaintiff, as well as to other Alabama residents, these contacts alone were insufficient in light of the lack of evidence of further contacts with Alabama. Id. at 1266. The defendant in Butler was not licensed to do business in Alabama, did not own property in Alabama, did not maintain an office or agents in Alabama, and did not advertise in Alabama. Id. Parkway likens itself to the defendant in Butler; it claims that is not licensed to do business in Alabama, owns no property there, maintains no offices or agents there, and did not advertise there. Furthermore, notes Parkway, it performed all of its services for the plaintiff in Georgia. Parkway contends that these facts negate a finding that Parkway engaged in "continuous and systematic" contacts with Alabama, which are required for general personal jurisdiction. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-415 (1984). It also argues that these facts disprove the existence of specific personal jurisdiction because they demonstrate that Parkway did not purposefully direct its activities at Alabama simply by treating a patient who, during the course of her treatment, moved to Alabama.

In support of her argument that general jurisdiction exists over defendant Parkway, the plaintiff cites to Ex parte Pope Chevrolet, Inc., 555 So. 2d 109 (Ala. 1989), in which the

8

Alabama Supreme Court found that personal jurisdiction existed over a Georgia automobile dealer. The court based its finding upon the fact that the defendant was a "large volume dealership" that did some of its business with residents of Alabama, and placed advertisements in regional media outlets that would reach Alabama. Id. at 109. The court especially relied upon the advertisements, finding that its use of media outlets such as the *Atlanta Journal/Constitution* created a reasonable inference that it was soliciting sales outside of its borders. Id. at 114. Furthermore, the defendant's sales to Alabama residents exceeded $100,000 every year. Id. This court notes that nowhere in the opinion does the Alabama Supreme Court conclude that it could assert general personal jurisdiction over the defendant. In fact, the Court applied the "purposeful availment" test of specific personal jurisdiction. Id. at 113. The subject matter of the litigation clearly related to the transaction between the two parties.

The plaintiff next argues that specific personal jurisdiction exists over defendant Parkway. She correctly notes that the defendant's physical presence in the forum state is not required for specific personal jurisdiction. She relies on the plaintiff's post-relocation follow-up treatments, which, she claims, were solicited by Parkway while Parkway was "aware of her domicile." The plaintiff claims that a Parkway mid-wife told her that Parkway treated other Alabama citizens. She also apparently relies upon the physical proximity of the defendant's office to Alabama.[1] She requests time for additional discovery to determine whether Parkway advertised in Alabama or personally contacted Alabama citizens to solicit their business. She also requests, in the alternative, that this court transfer the case to the Northern District of Georgia instead of dismissing it outright.

---

[1] The court queries how merely physically locating allegedly within thirty-minutes' driving distance outside the forum state constitutes a purposeful availment of the benefits and protections of the forum state's laws.

9

Defendant Parkway asserts that it has never advertised in Alabama through either Alabama media outlets or regional media outlets that specifically targeted Alabama. It argues that it was, at all times, the plaintiff's decision to return to Parkway for prenatal and postnatal treatment after she relocated to Alabama. Parkway argues that the plaintiff has shown no credible evidence that it either purposefully availed itself of the benefits and protections of Alabama law or engaged in continuous and systematic contacts with Alabama.

## CONCLUSION

The court concludes that general personal jurisdiction over defendant Parkway does not exist in this case. Parkway is not registered to do business in Alabama, maintains no agents in Alabama, owns no property in Alabama, maintains no offices in Alabama, and has not, through its agents or representatives, even visited the state. Showing that defendant Parkway began treating a Georgia citizen who, later, moved to Alabama, without more, is not sufficient to show "continuous and systematic contacts" with Alabama. The court also concludes that there is not specific personal jurisdiction over Parkway. There is no evidence of substantial contacts of Parkway in Alabama, nor that it directs its activities to residents of Alabama. The fact that its close proximity to Alabama might be a convenience to Alabama patients and cause them to become patients of Parkway is not controlling. Convenience is relative. Parkway has not availed itself of the protection of Alabama laws. All of its activities occurred in Georgia. The court concludes that it does not have personal jurisdiction over Parkway any more than it would have personal jurisdiction over a Lithia Springs McDonald's. The court will transfer the case to the Northern District of Georgia.

This ____ day of August 2001,

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

10